Good morning, Your Honors. May it please the Court, my name is Russell Petty and I'm representing the Plaintiff and the Appellant Talana Orzechowski. With respect to this matter, the issue that's been presented to this Court as to whether the California ban on discretionary clauses is preempted by ERISA has already been decided by this Court in the past, which relied on the Sixth Circuit's Ross decision, which also decided that bans on discretionary clauses are not preempted by ERISA. The arguments that Aetna makes to attempt to avoid Morrison and Ross, essentially that the saving clause might apply if the ban applies to documents outside of an insurance policy or has a collateral impact on some entity that's not an insurer, have been put to rest in the Fontaine case, where the Seventh Circuit, relying very heavily on this Court's decision in Morrison and of course the Ross case, has decided that those arguments are not particularly valid. And being as most of that has sort of already been decided and there really hadn't been any good arguments presented to this Court as to why Ross or Fontaine were not properly decided and of course this Court can't revisit the Morrison Court. But I'm going to focus, unless I get some direction from the Court, which I'm happy to get, I'm going to focus this morning on the actual grounds for the District Court's decision and why we believe the District Court erred in reaching its final result. Essentially, with respect to the standard of review, the District Court determined that there was a need for the plan to review beyond the statute's effective date of January 1, 2012 in order for it to be effective and that while the policy may have renewed beyond that date, the plan itself did not. There's about three or four, depending as to how you count, reasons as to why that's, respectfully speaking, in error. First, under just the pure statutory language, what the statute says is that the policy or contract or agreement, if it's issued or renewed, whether in California or not, to a California resident, then any discretionary provision in the policy is barred. The problem with the statute is it looks to me like I got a pretty good guess as to what California was trying to do here. The question is whether the mechanism they chose was effective in accomplishing that. So how do you get there with this language? Because we do have this funny provision. We've got the policy, contract, certificate, or agreement, but then when we get to the question of renewed, it only refers to a policy. So you have a policy that is deemed by statute to have renewed on January 1 of each year, but it's incorporated within the master plan, and the master plan hasn't by operation of law or, in fact, renewed. It was good as of 2011, which is before the effective date of the Act. Well, I mean, I submit to the court, and I appreciate the question, I submit to the court that what the legislature did here, which is to talk in broad terms in Section A about contracts, agreements, and policy, but then in the renewal provision in Section B to limit itself to policies was exactly what was intended. And the reason why I believe that's what was intended is, you know, the discretionary provision, it could be in a policy, it could be in some other document, a summary plan description, or a contractor agreement, the master plan here. We have at least two different discretionary phrases, don't we? We have one that appears in a policy. We have one that appears in the master plan. Yeah, and one that appears in the summary plan description as well. We actually have three, but the point is, is that regardless as to where the discretionary provision is, there's always going to be a policy. Because this statute only reaches disability insurance and life insurance, and in order to have disability insurance or life insurance, you have to have a policy. And so what the statute says is that when the policy renews, everything renews. And you can see that's sort of how it works. If you take the definition of renewal, which is, you know, renewal means the policy continues in force beyond its anniversary date, and insert that into Section A and the language you get as a result is going to say if an agreement, contract, or policy continues in force beyond the policy's anniversary date, then it prohibits all discretionary provisions. That's the plain language reading of the statute. I think that's the intended language of the statute. It makes sense because the legislature knew there was always going to be a policy, and it wanted to have the broadest possible scope of this provision. So I submit that the first argument is that under the statute as written, there's no need for the plan to separately renew. And Judge Bybee has sort of given me sort of a segue into my second point, which is, you know, the district judge recognized, the argument was made in front of the district judge that, well, wait a minute, the policy must be incorporated in the master plan, so therefore the master plan must have renewed when the policy renewed. And the district court's response to that was to point to some language in the master plan document saying, you know, what was incorporated and noted the policy wasn't included in that language. And I submit that that was in error. The master plan does say that governing documents are incorporated. It doesn't say, it doesn't give an exclusive or, you know, all-encompassing definition of governing documents. It just gives some examples. Certificates of insurance, summary plan descriptions, committee resolutions. It doesn't say that's all. It just says these are examples of what could be governing documents. The putting aside, as we argue in our brief, that a certificate of insurance is part of the insurance policy, it serves the same purpose for an insurance policy as a summary plan description does for an ERISA plan. I submit that the argument that the insurance policy isn't a governing plan document, yes. If we agree, if we agree with your argument, what do we do? Do we go on to the merits or do we send it back to the district court? Your Honor, I think we send it back to the district court. I think that we've raised the burden of proof argument. I think the burden of proof argument is critical, but in fairness, as Mr. Alberts points out, this was not an issue that was presented to the district court below, and I think fundamental fairness to everybody concerned should be that we go back to the district court. We get to raise the burden of proof argument, which in a case like this, given that no one's really certain the magnitude of my client's disabling condition. She has very, very, very many different problems that stem from very many different causes, and I submit that the burden of proof is a critical issue, and so I submit the appropriate thing to do is to remand to the district court for retrial under the correct standard of review and under the correct burden of proof. If there are, well, let me just, there's two other arguments besides the incorporation argument. One of them is that the statute, if you look at it correctly, doesn't have to, I mean, every district court that's looked at this statute has ruled, and I myself have argued in the Snyder case, that the statute is only effective if the policy renews beyond January 2012. That's not what it says. Let me back up just a moment and say, if it gets remanded, it was a district court bench trial. He wouldn't have to hear all the evidence all over again. All he'd have to do is review it under the different standard of review, wouldn't he? I mean, you know, this is an ERISA case, and so that's all you get anyway, Your Honor, as the court knows. I mean, all we're going to get is just a review of the record with maybe the parties getting an opportunity to show up for argument, and that's exactly right. All we're really asking for is a review of the record under the correct standard of review and the correct burden of proof. Then the court might come to the same conclusion they came to, even under that burden. You know, that's always a risk, Your Honor. You know, there's certainly nothing, you know, there's certainly nothing certain about this business, but we do submit that there was an error in the standard of review. Well, I guess I'm trying to understand your answer to Judge Bybee's question. What's the point of sending it back if the parties are not going to get a trial? They might not even get an argument. Why can't we just decide the merits? Or why shouldn't we? I mean, you guys have briefed it. We're here. We would short-circuit the… I'm just trying to understand why you think it's fair to send it back, since you tell me that if you go back, not much is going to happen. The parties are going to just sit there and wait for this court to rule, basically. What's fair about doing that and then having a second appeal rather than just deciding it now? Well, first off, Your Honor, I mean, I'm not adverse to having this court decide the matter. I was asked what I thought should happen, and I gave my opinion. I understand that. I'm just saying you gave an answer that said the fair thing to do is to send it back, and I'm just trying to understand why you think it's a fair thing to do after you tell Judge Walter that not much is going to—you're not going to get to do much in this court. What is the fairness of a remand? Here's why, Your Honor. I think the burden of proof in this case is fundamental. I think that whoever, given the evidence in the record, which I've examined very closely, it's my opinion that if Aetna has to bear the burden of proof, which I think they should under the law, that there's no way that they can successfully rule out all other potential causes of my client's various disabling symptoms and narrow it down to being primarily caused by psych. I think that's an impossible burden to place on them, although that's the burden I think they should carry. And so we're very confident, frankly, if this case goes back down to the district court and the proper burden of proof is applied, that we're going to prevail. We may not. I get surprised all the time by opinions. Sometimes they're good surprises and sometimes not. But this is a case where I feel that the burden of proof is going to be determinative as to whether Aetna could make its case. I'd like to reserve the balance of my time for rebuttal. Okay. Thank you. Thank you, Your Honors. We'll next hear from the other side. May it please the Court. I'm Ronald Alberts on behalf of the appellees. We obviously take a very different position on all of the issues that have been just presented to you. First of all, we think what's happening here is an impermissible attempt to expand the California Insurance Code beyond what it was intended for, its own construction of that code. We believe that in the event the court were to hold that, in fact, the insurance code applies to a master welfare plan. This is not a policy. This is not insurance. If it were to apply to a master welfare plan, then it's going way beyond the scope and essentially changing the nature of who governs our employee benefit plan. That's precisely what every district court except for the court in this case have held in California. This is a national movement to undo the discretion that is given to plan administrators. And California is not the only state that has undone that. So what would be unusual about California joining lots of other states and saying we no longer wish for insurers in California to exercise that kind of discretion? Oh, nothing. That's not the point. The point is not whether or not this insurance code provision can invalidate discretionary clauses in insurance policies. What we're dealing with here is not an insurance policy. What happened here, and I think it's important to step back and look at the bigger picture, and we can talk about the individual cases and why they kind of missed the point, but what's happening here is that the Boeing company created a master welfare plan, a master benefit plan for all of its employees for a variety of products and benefits they give to their employees. This is very distinguishable from a lot of the cases where you've got a single plan document that the insurance company has drafted and given to the employer, and here present this, where people have tried to get around these sorts of statutes. Here you have an employer that has decided on its own it wants to have discretionary review for a multitude of benefits. If you look at the underlying master welfare benefit. I want to make sure I understand your argument. Okay. So it's clear that we and other courts, including other courts of appeals, have upheld these efforts by the legislature to take away that discretion that plan administrators have, or plan creators, whoever it is, whether it's an insurance company or an outside plan administrator or the company itself. Not exactly, no, because this Court has never ruled on this specific question before. I understand the distinction that they're trying to draw. Okay. I'm skeptical of it. I'm going to tell you that right up front, but I at least understand it. So are you telling us that California doesn't have the power to do this or that they didn't accomplish it? No. I don't believe that the state legislature, through the California Insurance Code, has the power to tell an employer, this is the way in which you must have benefits. What's important here is you've got three different insurance companies and a self-funded plan, all of which are governed by the Master Welfare Plan that's at issue here. And that's what the judge below understood, at least. And the reason that California does not have the power to do what the appellants think that it did is because it's preempted. It's preempted by ERISA? Yes. ERISA would preempt. The only thing that's saved, the only reason these statutes are being upheld is not because it doesn't interfere with ERISA. It clearly interferes with ERISA and the administration of benefits on a nationwide level of employee benefits. Okay. The reason that they're upheld, the reason this Court upheld this sort of provision in the, I think it was the Montana case, was based on the fact that it was directed at insurance. The way in which the appellant would have this Court rule would focus the Court on, would permit this statute to apply equally to the employer. And that's not what it's about. Okay. And the reason that all of these have been upheld, and every one of them that's been cited, by virtue of the savings clause contained within ERISA that says there's an exception to ERISA preemption, and that exception to ERISA preemption is the, is our laws that are aimed at or directed at supplying insurance. This is not insurance that we're talking about here. It's easy to confuse it with insurance. This provision is based on 29 U.S.C. 1144, A2, or B2? I don't have that in front of me. That's the exception to the preemption clause? Yes. And that is why all of these have been upheld. Because states may regulate insurance, banking, or securities, but not employers. Is that your argument? Right. Because Boeing is not in the business of insurance. Okay. So this statute, the way in which the appellant is asking this court to apply it, would actually be directing it at a non-insurance entity, and it would not be saved from preemption. So it should be preempted. Essentially, our argument is, you know, lined up this way. First of all, we think that the insurance code does not apply to this. If you look at the totality of the California insurance code provision at issue, it talks over and over again, refers back and forth and left and right to insurance policies. There is kind of a reading of it that I realize plaintiff has made and others look at and think, oh, well, it's any contract or agreement. But really, those words could easily be read to mean any insurance contract or agreement. And throughout, when you look at the totality of the statute, it's all about policies and policy renewals and policy renews each year. When you look at a master welfare plan, when you look at ERISA. It doesn't matter as far as you're concerned. It's preempted, even if California purports to. Yes. When it's applied this way, it's preempted. I'm not arguing that the prior case law where this court has upheld the California insurance code as to discretionary provisions within a policy. No, that's, you know, I'm not arguing that point. That, you know, that ship has sailed. This is different. What I was actually focusing on is you said the statute can be read as limited to insurance contracts. Yes. Insurance contract and so on. So that would be trying to sort of fit the statute into the zone of preemption, of non-preemption to the exception, right? But you don't need that argument, right? Right. It's one of many ways of attacking the same issue. I mean, very likely the California legislature wanted to go as far as it could go. Yes. And my point is that if they go as far as appellant is suggesting, then to that extent, this insurance code would be preempted by ERISA. Because you can only, it is only saved from preemption if it's directed at insurance companies, at insurance statutes, and it's not. So let's say we accept your argument. Where does that get you? Okay. So if it is preempted, okay, then we go back to the original plan documents, which provide for an abuse of discretion standard review. Why wasn't the district court wrong under that standard? I'm sorry? Why didn't the district court err under that standard? Why did they not err under that standard? Because there was Not a they. It's a district court. Right. It's either he or she or an it. It's certainly not a they. No. The court didn't err because there was an abundance of evidence that the underlying claim, underlying disability was caused by a mental illness. There was a very, very small amount of evidence that dealt with anything beyond that. What about the chronic fatigue and the fibromyalgia, which doesn't seem to be taken into account at all? Chronic fatigue syndrome seems to have been pretty much ignored like it didn't exist by the plan administrator and largely by the district court. Why isn't that an abuse of discretion? It's not abuse of discretion because the abundance of evidence that was before the court did not deal with that, and the chronic fatigue and the fibromyalgia, I believe, was the other. Fibromyalgia? I believe it was. Can you say that three times fast? I can't. But those issues were, I believe, adequately dealt with by the reviewing physicians that were involved, and the burden was on, and we'll go to that as well. I don't know if I want to get into that issue because it wasn't properly raised below. These are real illnesses. They are real. They are in the DSM-IV, right? This was not something made up. People do suffer from these things, and people don't have to be crazy or mentally. This is not psychological. These are physical impairments. Why isn't the existence of these, which, as best I can tell, was not dealt with almost at all by, you know, certainly not given any weight by the plan administrator. Why isn't that an abuse of discretion? And why isn't the existence of those undisputed? I mean, there's no dispute that she suffers from these things. Why doesn't that take it, per se, out of the, what do you call it, psychological exclusion? Because her inability to function in her employment was clearly primarily caused by her mental illness, and that's because if you look at all of the evidence that she presented, you look at the neurologist, you look at the psychiatrist, everyone says there is no physical cause that is resulting. For those symptoms. But they don't deal with chronic fatigue syndrome. It's sort of like, you know, you can have mental problems, you can be depressed and all those things, and also suffer from a physical ailment. Clearly, I'm not disputing that at all. And had the primary cause of her inability to function. Can you show me where in the plan administrator's decision this is dealt with? Where the language in the plan is on that? No, no. Where the decision of the plan administrator, the one that's under review, where do they deal with this? And then we can go to this report, but let's start with the plan administrator's decision. I don't have that record. I don't have that record. I did not order that. Would you be more comfortable talking about the district? No, it's fine. We can talk about this. We've got, we argue in the record. No, no, I'm talking about the decision of the administrator, not what you argued. I'm talking about the actual decision of the plan administrator. And I don't have it. Don't have a copy of it from me at this point, of the plan administrator. You didn't think we'd talk about that? You didn't think when we're abusing abuse of discretion we'd actually want to talk about what the actual decision that we're reviewing says? You don't think that's important? You came to court unprepared? I think opposing counsel is willing to share. Well, the, thank you. Okay. Well, in the letter from Aetna, okay, it talks about the variety of actions. Where is this so I can follow along? It is from the excerpts of record, 531, I believe. 531, let me get there. 531. Okay. 510, 514, 529, 530, 531. 531 for me is, oh, I'm sorry, there are two sets of numbers. This is 642. I'm sorry, what number? 531. 531. There are two sets of numbers here, a little confusing, but I am with you. Okay. It says at the bottom the referral questions and conclusions, and it says based on the provided document. So what is this thing? It's a table? This is the report from the physicians who are reviewing. I'm asking you for the decision of the, where does Aetna say, look, it is not, you know, you may suffer from chronic fatigue syndrome and fibromyalgia, but that's not the significant reason why you're unable to work. Those things are insignificant. What's significant is only your mental. You know, when do they say that? Do they say that? I don't have that document in front of me right now to read from it to you. I'm sure it's part of the excerpts of record in our denial letter and in the letter upholding on appeal following. Why don't you file something in 24 hours? File a letter pointing that out, okay? Okay, will do. Okay, now let's look at the district court's order. You're probably more familiar with that. Where does the district court say, yes, she suffers from these two physical ailments, but they are insignificant when compared to the mental impairments? Where does the district court say that? Or maybe you think it's not important for the district court to have said that. No, I think the district court found that Aetna performed a full and a complete review and took all of the various I know what the district court did say. I'm asking you whether it compared the two and said what you claimed. They said, well, look, the mental impairments are what dominated. These physical impairments are not important. This is what you characterized. Where is that in the district court's opinion? Do you want to send a second letter? I'm sorry. I have the ---- You want to? The section of the court's opinion is under the medical records received by Aetna. I'm sorry, what page? It's page two of the opinion on the printout that I have. I'm sorry? The heading is medical records received by Aetna. Is this relevant in the decision? It's part of the decision, yes. Okay. So this is page two, excess of record eight? Medical records received by Aetna is the heading. I don't see anything like that. Maybe I'm looking at the wrong thing. It talks about the records from Dr. ---- Why don't you tell me an excess of record number? Page five of the opinion, I don't have the excess of record number. Do you have it? You said page one. Now it's on page five. There are references to chronic fatigue syndrome and fibromyalgia on page six of the district court's opinion. I'm using the district court's numbering, so I don't have an ER or SER reference. But that is the ---- that's just a recitation of what Aetna received. That was my impression, that the district court mentions it. But then sort of ignores it. Sort of, you know, it's like it didn't happen. It's sort of like saying, oh, she also had cancer, but we're not going to think about that. We're going to just talk about her mouth illness. How can we be a ---- how can we say it's not an abuse of discretion for the district court to simply not weigh these physical ailments? We do have one additional reference on page 10 of the district court's opinion. The district court is referring to, in the chronology at the bottom there, to Aetna notifying her of a decision to terminate her benefits and that the letter acknowledged her chronic fatigue syndrome. Right. And the judge discusses that on page 10. Is that enough? Is that enough? Well, I ---- To say that Aetna did this, is this enough in conducting a ---- Well, and for the court to consider the evidence that was in the record that she had presented regarding her disability and to look at the totality of the ---- You don't think the district court needs to address the speech part and say, look, these are not significant? No, I think the district court had ---- I don't think the district court needs to make a pronouncement regarding each and every diagnosis or illness. Let's say, in fact, what she had was she was sort of paralyzed from the neck down. You know, she was in an auto accident or whatever, and the district court doesn't mention it. I mean, mention that that's a fact, but doesn't sort of weigh it in the analysis. Would you think that's not an abuse of discretion? No, that would clearly be an abuse of discretion. So why is chronic fatigue syndrome any different from that? Because it's simply a diagnosis. It isn't ---- you can argue, people can be diagnosed with a whole variety of ailments. Whether those ailments cause a lack of functionality is an entirely different issue. I understand, but you have to sort of weigh whether they, in fact, cause a lack of functionality. Right. And the district court's ---- I'm sorry. Don't you have to weigh and compare them to the rest? Well, I think the district court needs to review the underlying decision and make a determination as to whether they were adequately considered by the proper physicians and whether the proper weight was given at that level. I don't think the district court itself ---- And the district court did that? I believe they did, yes. And where does it talk about, the district court talk about what weight was given to these two physical ailments? It discusses the ailments in the opinion, I believe page 10. It spends a lot of time talking about the mental impairments. But where does it ---- as the rationale for her inability to function. It is the burden of the claimant ---- I'm sorry, you don't think she relied on the two, on chronic fatigue syndrome or fibromyalgia? Not as her primary reasons for not being able to work. Her primary lack of functionality is caused by some extraordinarily severe mental illness, which is very, very clearly documented within the record, including a lot of ---- So that's your position, that she didn't rely on it? Behavior that she could not possibly ---- That's your position? Yes, that's my position. Okay. I guess we'll see whether opposing counsel agrees. Briefly, Your Honor, first with respect to the preemption issue, we're being presented with sort of a catch-22 situation. If the statute purports to ban discretionary provisions outside of an insurance policy, then it's not safe from preemption. But so, therefore, the insurance company, if it wishes, can just put the discretionary provision someplace outside of an insurance policy. In other words, as the Court sort of pointed out ---- You make it sound so bad, but that's, for better or for worse, that's the line Congress has drawn. It says if it has to do ---- I mean, the field is preempted. I mean, that's the basic rule. If you're dealing with employee benefit plans, it's federal law. State law has nothing to say about it. They create an exception for laws that govern insurance, the business of insurance, banking, those fields. But insurance is relevant here. So an employer is entitled, just like everybody else, to take advantage of the law as it is written. Congress could have written a law more broadly and said, you know, it's made the exception broader, but ---- Well, you know, the problem with that, and I appreciate that that's a good point, Your Honor, but, you know, the essential problem with that is that, as I think the Metropolitan Life course pointed out, Congress passed a very broad preemption statute, but then passed an equally broad provision saving state insurance regulations. And I think there was sort of an ironic comment of, you know, Congress, you know, sometimes takes everything and then gives everything away, but rarely at the same time. But that's what it did. And so ---- What ---- I mean, that's what it did. Why is it up to us to rejiggle what Congress did? I mean, they made, drew a line, and employers look at the law. They have lawyers, too, and they say, well, you know, the law says this, you know, this falls on this side of the line, that falls on that side of the line. We're going to govern our conduct to stay within the preemption zone. What's wrong with that? Well, I mean, no one's asking for any jiggling or jiggering at all. I mean, the fact is that Congress created, expressly created, reserved in the states broad power to regulate insurance. And I submit that it was not Congress's intent. It certainly isn't consistent with the language of the statute to say that, you know, we're going to give an insurance company an opportunity to sort of write that broad power to regulate insurance out of existence. Let me ask you the question in a somewhat different way. Saying, look, if it's an insurance contract, that's a bright line. You know, everybody can apply, they can plan their conduct in the future. If it's an insurance contract, it falls with an exception. If it's outside of it, it doesn't. That at least has advantages of being easily administrable and predictable. People don't have to keep coming to court and guessing what courts are going to do. Whereas the rule you're proposing is, you know, this is psychological, you know, we have to conduct psychology of what the legislature meant and what Congress meant and what the plan administrator meant. Were they being sneaky? Were they having these ulterior motives? You know, it's a rule that is incredibly fuzzy and difficult to administer, and you'll never have a case that's decided without going to court. Your Honor, I submit that it is. Isn't that why not opt for the bright line rule? Well, it's an insurance contract. Bam. It's in the same disclosure. It's not an insurance contract. It's outside the same disclosure. And wouldn't you rather win on abuse of discretion? Your Honor, I'd rather win anyway. I can win. Although I have to tell you that, I mean, these discretionary provisions, you know, they come up in all the cases. We kind of have a bright line rule already. Most of the time the defense counsel has accepted the fact that, you know, the discretionary provision is no longer in play, and we generally reach stipulations as to that. And so, you know, this decision has impact, you know, far outside the. . . But there's no circuit case on point, right? Not in the Ninth Circuit. I mean, you've got Ross and you've got Fontaine with the Sixth and the Seventh Circuit. And, by the way, the Seventh Circuit, I mean, it's just. . . You know, it's addressed the argument that, well, what if they put it someplace other than a policy document? And it's come exactly to the right decision. It said that that violates the Supreme Court's holding in Ward versus Unum, that, you know, you shouldn't just be able to write your way around, you know, otherwise unpreempted law that regulates the conduct of insurance companies in this fashion. And with respect to Miller, you know, Miller says that just because the insurance regulation has an incidental effect on non-insurance entities doesn't mean that it still somehow escapes, you know, the scope of the Savings Clause. So these issues have all been decided. Your Honor, if I could just have just 20 seconds to talk about the Court's discussion with the actual medical condition, Your Honor, exactly right. The. . . I was just asking questions. Yeah, but you're. . . You have no idea what I'm thinking. That's true, Your Honor. But the questions were exactly. . . I can come up with some really hard questions for you, too. If you just give me half a chance, I can come up with. . . And hopefully we won't get to that, Your Honor. But my point. . . Well, no, I want to know what your answer is to the same questions I asked opposing counsel, and then I'm going to push you and tell you why you're wrong and whatever. Or, you know, ask you why. . . They absolutely punted on the question, Your Honor. That's a sports term. But, counsel, that's not exactly true. So while we've been having this discussion, I've been paging through the district court's opinion, and there are repeated references to chronic fatigue syndrome and fibromyalgia on pages 23, 24, 25. The district court discusses all of that and rejects it. We may or may not agree with the district court if we were reviewing de novo, but if we're reviewing under some kind of a discretionary standard. . . Your Honor, Dr. Moore testified. . . Not testified. . . She stated in her report she has great experience with the chronic fatigue syndrome, said Ms. Orchowski has it, and it's disabling. Now, simply, what I believe the district court did is looking at the lack of neurological evidence and saying because there's no neurological cause for plaintiff's symptoms, that therefore her illness must be psychiatric in nature. That's the thrust of the district court's opinion, the same as it's the thrust of Aetna's denial, and I submit that's just not legitimate, that you have to look at these other conditions. What's the point of language in this court's order? What do we do with Dr. Niemark's comments, pages 23 and 24 of the district court's order? That's a treating physician, is that correct? That's one of the treating physicians. There are numerous, as you would expect from a condition like this. And what pages, Your Honor? I'm looking at 23 and 24. This is the paragraph where the district court quotes your witnesses. All right, and I have that in the record as 29 and 30. Well, I mean, Dr. Niemark made a number of very, I think, very powerful pronouncements that the notion that you can say that the plaintiff did not have chronic fatigue syndrome and fibromyalgia was impossible because those diagnoses aren't subject to objective proof, which is, I think, dispositive. If you have Dr. Moore who said she has these conditions and there's no test that can prove she doesn't have these conditions, and as a matter of fact, there's no expert employed by Aetna who even actually ever looks at that issue to determine whether she has these conditions and whether these conditions are disabling. Rather, all they do is look at the absence of a neurological injury. From the record, you're not disputing that your client may have some mental problems? I don't think there's a question in the world that she has some mental issues. Your contention is that conditions such as fibromyalgia and CFS are independent of any medical conditions that she has disabling and that there isn't a connection, there's no medical evidence that there is a connection between her mental illness and the CFS and fibromyalgia. You know, the plan requires that in order to fit within the exclusion, yes, essentially, Your Honor, the plan requires that the mental illness be the primary cause of the disability, and in this case we have these two conditions which are probably independently disabling in spite of the psychological problems that my client almost certainly has. So simply there's just no showing as to sort of allocating the burden. I appreciate the time, Your Honor. If there are no further questions, then I'll submit. Thank you. Okay. Thank you. The case is argued. We'll stand submitted.
judges: Kozinski, Bybee, Walter